UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
                                                           :
ANTHONY TORRES,                                            :
                          Plaintiff,                       :
                                                           :   **MEMORANDUM DECISION AND**
              - against -                                  :   **ORDER**
                                                           :
COMMISSIONER OF SOCIAL SECURITY,                           :   14 Civ. 6712 (BMC)
                                                           :
                          Defendant.                       :
                                                           :
---------------------------------------------------------- X

**COGAN,** District Judge.

Plaintiff challenges the decision of the Commissioner, after a hearing before an Administrative Law Judge, that he is not disabled for purposes of receiving supplemental security income under the Social Security Act. There is no dispute that plaintiff has severe orthopedic impairments consisting of cervical stenosis, surgically fused discs, and right shoulder impingement syndrome. The question is whether his back problems were sufficiently alleviated by surgery to leave him with sufficient functional capacity to perform light work with restrictions on reaching, climbing, or stooping. The case is before the Court on the parties' cross-motions for judgment on the pleadings. For the reasons set forth below, the case is remanded to the Commissioner for further proceedings consistent with this opinion.

## BACKGROUND

### I. Procedural History

Plaintiff applied for disability insurance benefits on November 3, 2010, alleging disability since January 31, 2009, due to neck, back, shoulder, hand, knee, and foot pain; stomach disease; and breathing problems. His claim was denied on August 4, 2011. A hearing was held before an Administrative Law Judge, at which plaintiff appeared with counsel and testified. The ALJ denied plaintiff's claim, finding that plaintiff could perform a range of light

work and therefore was not disabled. The Appeals Council denied plaintiff's request for review, and this appeal followed.

## II. **Non-Medical Facts**

Plaintiff was born in 1968 and obtained a general equivalency diploma. Plaintiff worked as construction worker between 2004 and 2009 and testified that this is the only type of work he has ever done.

Plaintiff had a colon resection surgery in April 2009. Following that surgery, plaintiff began to experience severe left-sided pain radiating to his shoulder, neck pain, and numbness in his hands and fingers. Following an evaluation, in October 2009, plaintiff had a cervical herniated disc removed. From November 2009 through September 2010, plaintiff's cervical pain was better, but he had an increase in the impingement pain in his right shoulder. In February 2010, he noted that after sleep he had some tingling in the tips of his fingers. A few months later, plaintiff attempted to return to construction work, but could not do so because of the pain. He noted increasing pain in his neck, shoulder blades, shoulder; as well as tingling in his hands. In January 2011, after plaintiff had additional surgery he generally reported that his pain had decreased, but reported musculoskeletal pain when he tried to return to activity.

Plaintiff testified that he was unable to work due to severe pain and numbness in hands. Additionally, plaintiff said he had difficulty bending over to take off his shoes; was unable to stay still or sit for more than twenty minutes; had intermittent numbness in his hands, fingers, and feet; pain in his neck, shoulders, and lower back that requires use of a brace; and poor sleep. He testified that there are times when he has to put down what he is holding in his hands because of the pain and numbness. Plaintiff testified that lying down does not alleviate his symptoms,

and that any use of his body exacerbates his symptoms. Plaintiff takes oxycodone for the pain, but that medication makes him feel drowsy

Plaintiff lives with his girlfriend, he generally takes care of his own personal needs, but his girlfriend has to help him take off his shoes. Plaintiff testified that most of the time he is at home, he spends roughly an hour or two a day on the computer. Plaintiff testified that he usually only leaves home to attend doctor's appointments.

### III. Medical Evidence of Back and Neck Pain

#### A. Treating Physicians

Plaintiff has a well-documented history of back and neck problems requiring surgery. In addition, plaintiff had thyroid surgery that impacted his neck and back. Plaintiff mainly received treatment from Dr. Chris Overby, a neurosurgeon, Dr. Sanford Dubner, an endocrinologist, and Dr. Maria Staniloiu, plaintiff's primary care provider.

Plaintiff's back and neck pain began in April 2009 after he underwent colon resection surgery. Roughly a month after this surgery, plaintiff met with Dr. Overby. Plaintiff complained of numbness in his hands, especially when elevated. An MRI of plaintiff showed he had central disc herniation with significant compression of the spinal cord, moderate narrowing of the spinal canal tied to bone spurs, and a mild congenitally narrowed spinal canal. Around this time, plaintiff also had a biopsy of a right thyroid nodule, but further examination of this issue was postponed until after plaintiff's spinal surgery. On October 26, 2009, Dr. Overby operated on plaintiff to remove his herniated disc.

Following the surgery, plaintiff met with Dr. Overby regularly for follow-up appointments. From October 2009 through April 2010, plaintiff's back recovered well. However, he experienced an exacerbation of impingement syndrome in his right shoulder and

noticed tingling in the tips of his fingers. In April 2010, plaintiff attempted to return to work in construction. Plaintiff began to have pain in his neck, shoulder blade area, and shoulder, along with increasing tingling in his hands. Dr. Overby said that plaintiff's return to construction work was the only change that could account for this increase in pain. He also stated that "his job is exacerbating his rather significant symptoms." Dr. Overby recommend plaintiff have another MRI, which was undertaken on May 21, 2010.

Plaintiff's MRI showed several abnormalities, including bone spurs at multiple levels, as well as a right thyroid cystic lesion. Plaintiff consulted with Dr. Overby and Dr. Dubner, an endocrinologist. Dr. Dubner recommended a thyroidectomy to remove plaintiff's thyroid. Plaintiff met with Dr. Overby again in June 2010 and complained of recurrent symptoms of arm pain numbness. Over the next few months, plaintiff met with both Dr. Overby and Dr. Dubner to discuss the thyroid surgery. They advised him that the cervical plate in his neck would have to be removed in connection with the surgery. Plaintiff was also diagnosed with degenerative disc disease and was told this could be addressed during his thyroidectomy.

Plaintiff had a thyroidectomy and additional back surgery on January 10, 2011. The surgery removed all of the previously placed screws and plates, all degenerated disc material, and formations that were compressing plaintiff's nerve routes. Plaintiff continued to have follow-up visits with Dr. Overby. Roughly two months later the doctor reported that plaintiff was "really doing very well," but he "has tried to return to slight activity and was having a lot of musculoskeletal pain" that he said was likely the result of "deconditioning."

Plaintiff also had appointments with Dr. Maria Staniloiu, his primary care physician, between April 2010 and May 2011. He had a physical on May 10, 2010, his physical examination was unremarkable. She diagnosed plaintiff with hyperlipidemia, meaning he had

4

too many fats in his blood; keloid scar; and bulging cervical disks.  Plaintiff had a follow-up appointment with Dr. Staniloiu for his neck pain six months later, in November 2010.  She diagnosed him with hypertension, a bulging cervical disc, a history of cervical vertebral fusion, and neck pain.  Plaintiff had another physical with Dr. Staniloiu in May 2011, roughly four months after his thyroid surgery.  Under "HPI", or history of present illness, the doctor's notes say "Ch[eck] neck pains, improved[] after [surgery] still not able to work full time."  Dr. Staniloiu diagnosed plaintiff with hyperlipedmia, improving hypertension, and a bulging cervical disk.

### B. Consulting Physicians

Dr. Louis Tranese performed a consultative orthopedic examination of plaintiff on July 22, 2011.  Plaintiff reported that he had persistent neck pain, a 7 or 8 out of 10.  He said his pain was aggravated by "standing long periods, bending, heavy lifting, and performing bilateral shoulder overhead movements;" and he suffered from "persistent numbness and tingling of the bilateral hands with pain on the lateral aspect of the hand that extends to the wrist."  Plaintiff reported that he was able to cook two or three times a week, clean, do laundry, and shop once a week.

Dr. Tranese's physical examination reflected that plaintiff did not appear to be in acute distress and was able to walk normally.  Plaintiff's hand and finger dexterity were intact.  Plaintiff was diagnosed with a history of cervical disk derangement with cervical spine diskectomies with fusion, chronic neck pain with residual hand numbness and tingling, and per plaintiff, a reported history of hypertension.

Dr. Tranese's "Medical Source Statement" found that plaintiff had moderate restriction with activities that require repetitive overhead reaching or lifting and carrying heavy objects with

5

his arms.  He has mild restriction with frequent bending.   Plaintiff has mild restriction with performing repetitive or sustained gross manual activities with his hands, particularly gripping, grasping, lifting, carrying, pushing, or pulling heavy objects.

Plaintiff's medical records and a residual functional capacity ("RFC") assessment were reviewed by Dr. George Walker, a State agency medical consultant.  Dr. Walker affirmed that the RFC assessment completed by a single-decision maker was accurate.

## IV.   ALJ's Decision

The ALJ applied the familiar five-step process required by the regulations, as described below.  Ultimately the ALJ found plaintiff not disabled and denied his application for benefits.  He found that plaintiff had several severe, but non-listed impairments.  His decision turned on his assessment of plaintiff's RFC.  He concluded, contrary to the view of plaintiff's treating physician, Dr. Staniloiu, that he can sit for six hours in an eight hour workday, stand and/or walk up to six hours in an eight-hour workday, and lift and/or carry up to twenty pounds occasionally and ten pounds frequently.  He added that although plaintiff retains the ability to frequently handle and finger, the claimant can only occasionally reach overhead, climb, or stoop.  In essence, the ALJ found that plaintiff had significant back problems, but retained some functionality.  He accorded significant weight to the opinion of Dr. Tranese, and some weight to the opinion of Dr. Walker.  The ALJ found that plaintiff's back problems could be expected to cause the alleged symptoms, but found plaintiff's characterization of the pain was not consistent with the medical record as well as plaintiff's daily activities.

The ALJ found that plaintiff could not return to his previous job due to his limitations.  But, relying on the testimony of a Vocational Expert ("VE") the ALJ held that plaintiff could

6

perform jobs that exist in the national economy, including cashier, counter attendant, and routing clerk. The ALJ therefore entered a finding of "not disabled."

## DISCUSSION

Plaintiff raises five specific issues: First, the ALJ committed reversible error by failing to provide any reasons or discussion as to why he rejected the opinion of plaintiff's primary care physician, Dr. Staniloiu. Second, the ALJ's finding that plaintiff can perform light work is not based on substantial evidence. Third, the ALJ failed to properly evaluate plaintiff's subjective complaints, and his credibility finding is not supported by substantial evidence. Fourth, the Appeals Council committed a reversible error by failing to remand to the ALJ to review new MRI evidence. Fifth, the Commissioner failed to sustain her burden of establishing there is other work in the national economy plaintiff can perform.

### I. Standard of Review

A district court may set aside the ALJ's determination that a plaintiff is not disabled "only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (internal citations omitted). "Substantial evidence" is "more than a scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). An evaluation of the "substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If there is substantial evidence in the record to support the Commissioner's factual findings, they are conclusive and must be upheld. 42 U.S.C. § 405(g); see also Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999). In reviewing the ALJ's decision and the administrative record, a district court may not "substitute its own judgment for that of the

ALJ, even if it might have reached a different result upon a de novo review." Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991).

The claimant bears the general burden of proving disability. Burgess, 537 F.3d at 128. A claimant is disabled within the meaning of the Social Security Act if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A). The Commissioner must consider "the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." Id. § 423(d)(2)(B).

The Social Security Administration ("SSA") has promulgated a five step analysis whereby the ALJ must make a finding of disability if she determines: "(1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, . . . (4) that the claimant is not capable of continuing in his prior type of work, . . . [and] (5) there is not another type of work the claimant can do." Burgess, 537 F.3d at 120; see also 20 C.F.R. § 404.1520(a)–(g). The claimant bears the burden of proof at steps one through four; at the step five, the burden shifts from the claimant to the Commissioner, requiring the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

When determining a claimant's RFC at step four, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question. See 20 C.F.R. § 416.929; Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record. Genier, 606 F.3d at 49. In doing so, the Act's regulations provide a two-step process. At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). If the claimant does suffer from such an impairment, the ALJ must consider at the second step "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of the record. 20 C.F.R. § 404.1529(a).

## II. Analysis

### A. Dr. Staniloiu's Opinion

Plaintiff alleges that the ALJ committed reversible error because he failed to accord the opinion of plaintiff's treating physician, Dr. Staniloiu, any weight and gave no explanation for not crediting her testimony. Dr. Staniloiu began treating plaintiff in April 2010 and continued treating him through May 2011. As part of plaintiff's physical, in May 2011, Dr. Staniloiu noted that plaintiff continued to have neck pain and was "still not able to work full time." Defendant contends that because Dr. Staniloiu's opinion about plaintiff's ability to work is a matter reserved to the ALJ, her opinion cannot be given any weight or special significance.

The ALJ ignored the "treating physician rule," which generally requires a measure of deference to the medical opinion of a claimant's treating physician. See Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2). However, medical source opinions

9

on issues that are reserved to the Commissioner are not considered to be medical opinions "because they are administrative findings that are dispositive of the case." 20 C.F.R. §§ 404.1527(d)-(d)(1), 416.927(d)-(d)(1). The relevant regulation states that "[w]e are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that you we will determine that you are disabled." Id. The regulations make clear that the Commissioner need "not give any special significance to the source" of those opinions. 20 C.F.R. § 404.1527(d)(3). Dr. Staniloiu's opinion regarding plaintiff's ability to work is on a matter reserved to the Commission, so the ALJ did not need to accord it special significance. See Bynum v. Astrue, No. 11 Civ. 5111, 2013 WL 1873286, at *2 (E.D.N.Y. May 3, 2013).

Although Dr. Staniloiu's opinion is in an area reserved to the ALJ, because she was a treating physician, the ALJ should have at least discussed her other opinions regarding plaintiff, and the weight they were accorded. See Perez v. Colvin, No. 12 Civ. 5317, 2013 WL 5350566, at *4-5 (E.D.N.Y. Sept. 23, 2013). The ALJ's opinion briefly states that Dr. Staniloiu was plaintiff's primary care physician, but she is mentioned only cursorily in the decision.

An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give to the opinion. 20 C.F.R. § 404.1527(c)(2). These factors include the: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. Id. Regulations also provide that the Commissioner "will always give good reasons in our notice of determination or

decision for the weight we give [claimant's] treating source's opinion." Halloran, 362 F.3d at 32 (quoting Schaal v. Apfel, 134 F.3d 496, 503-04 (2d Cir. 1998)). Looking at the ALJ's decision, it is clear that he did not accord Dr. Staniloiu's opinion any weight, but it is unclear why he did not do so, or whether he evaluated her opinion using any of the factors set forth above. See Teta v. Barnhart, 305 F. Supp. 2d 240, 250 (E.D.N.Y. 2004) (faulting an ALJ for failing to provide sufficient explanation to support his opinions). The ALJ's failure to provide any explanation as to why controlling weight was not given to Dr. Staniloiu's opinion requires me to remand this case to the ALJ to apply the correct legal standard.

### B. RFC Determination

As noted above, the ALJ found that claimant retained the RFC to perform "less than the full range of light work." Plaintiff claims that this RFC determination was improper because the ALJ failed to consider the opinion of Dr. Staniloiu, and did not fully credit any of the medical opinions on record. Plaintiff argues that the ALJ substituted his own judgment in place of a medical expert. Because the ALJ did not clearly explain certain aspects of his RFC in a manner that makes it clear they are substantially supported by evidence, I remand for the ALJ to provide additional analysis of Dr. Staniloiu's opinion, and more detailed analysis regarding his rejection of Dr. Tranese's opinion.

The ALJ stated that he accorded "significant weight" to the opinions of Dr. Tranese, based on his personal examination of plaintiff, and consideration of his subjective complaints. However, Dr. Tranese said that plaintiff may have a mild restriction in the use of his hands. The ALJ did not credit this portion of Dr. Tranese's source statement. Instead, he said it was not reflected in the medical records. The ALJ is free to resolve issues of credibility and choose between conflicting, properly submitted, medical opinions, but he cannot substitute his own

11

judgment for a competent medical opinion. Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998). The ALJ's decision not to credit Dr. Tranese's opinion regarding plaintiff's hands and fingers is not based on evaluating two conflicting medical opinions; rather, it is based solely upon the ALJ's independent evaluation of the medical records. Plaintiff consistently complained about numbness in his hands, both to Dr. Tranese, and his other doctors. Dr. Tranese credited his complaints and the ALJ did not provide a sufficient reason for rejecting his opinion. The ALJ did not "proffer specific medical evidence that the plaintiff can meet the exertional demands necessary" to maintain the recommended level of work. See Gray v. Chater, 903 F. Supp. 293, 300 (N.D.N.Y. 1995).

The ALJ also accorded "some weight" to the opinion of Dr. Walker, a State agency medical consultant. Dr. Walker affirmed an RFC completed by a single-decision maker, which stated that plaintiff was capable of "light exertion."[1] Dr. Walker never met plaintiff, but he reviewed his records. Dr. Walker did not explain his findings, and his conclusions were comprised of two brief sentences. Regulations provide that "because nonexamining sources have no examining or treating relationship . . . the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. 416.927(c)(3). Dr. Walker failed to provide supporting explanations for his opinion, and the ALJ did not sufficiently explain why his opinion was entitled to any weight.

The numbness in plaintiff's hands and fingers is an important issue in assessing plaintiff's RFC. The record lacks substantial evidence to support the RFC that plaintiff can frequently use his hands and fingers. The case is therefore remanded for the ALJ to provide additional analysis on the issue using the correct standards. If the ALJ determines that there is

---

[1] The decisions of single-decision maker are not entitled to weight as a medical opinion. See Box v. Colvin, 3 F. Supp. 3d 27, 46 (E.D.N.Y. 2014).

12

not adequate information on the record to accept Dr. Tranese's opinion, he has an affirmative duty to seek out more information from and develop the record accordingly. Teta, 305 F. Supp. 2d at 252.

### C. The ALJ's Evaluation of Plaintiff's Credibility

Plaintiff also argues that the ALJ did not properly evaluate his subjective complaints. The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." The ALJ pointed to inconsistencies between plaintiff's statements about his condition and medical reports about his condition, plaintiff's broad range of daily activities, and improvement's in plaintiff's condition and pain levels following surgery.

This Court must uphold an ALJ's assessment of a plaintiff's subjective complaints if substantial evidence supports that determination. Fiedler v. Colvin, 54 F. Supp. 3d 205, 217 (E.D.N.Y. 2014). The ALJ is required to consider a broad array of factors and the "determination of decision must contain specific reasons for the finding on credibility, supported by evidence in the case record." SSR 96-7P, 1996 WL 374186, at *2; see also 20 C.F.R. 416.929(c)(3).

The ALJ's credibility determination is supported by substantial evidence and contains enough detail to make it clear that he considered a variety of factors, such as plaintiff's activities of daily living, his medications, his treatment, and his subjective pain reports. Plaintiff's last spinal surgery occurred in January 2011. By March 2011 he reported that he "really has no pain." His doctor noted that "he is doing very well," and any pain he was experiencing was the result of "deconditioning." In May 2011, plaintiff reported to Dr. Staniloiu that his neck pains

13

had improved after surgery. Although plaintiff testified at his hearing that he was in pain every day, there is substantial evidence in the record to support the ALJ's determination that plaintiff's statements regarding the pain he was experiencing were not credible, and that his pain levels had substantially improved. Further, the evidence plaintiff uses to demonstrate he had a cervical impairment comes from an MRI that was taken *before* he underwent his last surgery. This evidence does not corroborate plaintiff's subjective complaints about his pain levels after surgery.

Plaintiff once again criticizes the ALJ's failure to give significant weight to the opinion of Dr. Staniloiu regarding plaintiff's ability to work. However, plaintiff's emphasis on this statement is misplaced. Dr. Staniloiu's opinion is on an issue reserved to the Commissioner and does not speak to the credibility of plaintiff's subjective complaints.

The ALJ also took into consideration plaintiff's use of the pain medication oxycodone. At the hearing he asked plaintiff how this medication affected him, and after plaintiff said it made him drowsy, the ALJ adjusted his RFC accordingly.

Plaintiff contends that the ALJ did not properly credit his claims about the restrictions on his daily activities that his pain and injuries cause him, he says that they prevent him from working an eight hour day. The ALJ must take into consideration the claimant's subjective account of his symptoms and limitations, but only "to the extent that they are consistent with objective medical evidence and other evidence." Alcantara v. Astrue, 667 F. Supp. 2d 262, 276 (S.D.N.Y. 2009). The ALJ acknowledged plaintiff had certain functional limitations, but also outlined numerous activities that plaintiff can manage. Plaintiff takes short walks, can drive and travel independently, prepares meals, shops, does light housework, travels to visit with friends, and attends car shows on a weekly basis. Dr. Tranese's assessment provides additional evidence

14

that plaintiff is able to move and walk normally, subject to certain restrictions. There is substantial evidence to support the ALJ's credibility assessment, and the ALJ properly considered multiple factors pertaining to plaintiff's credibility.

### D. Appeals Council Consideration of New Evidence

Plaintiff contends that the Appeals Council committed reversible error in failing to remand this matter to the ALJ to review the new evidence plaintiff submitted after his hearing. Plaintiff submitted results of an MRI from March 29, 2013, which shows that plaintiff had a herniated disc as well as a disc bulge; along with an irrelevant document showing plaintiff was having problems with his prostate. The Appeals Council must consider new and material evidence "only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 416.1470(b); see also Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996). The ALJ issued his decision in this case on March 13, 2013. The MRI is the only potentially material evidence submitted by plaintiff. The MRI was taken roughly two weeks after the ALJ's decision was issued. The MRI does not provide new or material evidence about plaintiff's back during the relevant decision-making time period, and thus the Appeals Council did not commit any error in failing to remand the case to the ALJ to consider it.

### E. Work in the National Economy

Finally, plaintiff contends that the Commissioner has failed to show there is other gainful work in the national economy which he could perform, because the RFC does not adequately account for his limitations. Because I have remanded the case to the ALJ to apply the proper legal standards in assessing plaintiff's RFC, I will not address this allegation because it is dependent upon a revised ALJ opinion.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings is GRANTED and the Commissioner's cross-motion for judgment on the pleadings is DENIED.  The case is remanded.  The ALJ shall apply the proper legal standards regarding plaintiff's primary care physician, Dr. Staniloiu, and shall explain the basis for his RFC determination that plaintiff can frequently use his hands and fingers, or will develop the record further on this point.

**SO ORDERED.**

                                                U.S.D.J.

Dated: Brooklyn, New York
        November 16, 2015